## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Jeanie Linn Nestlehut**                                                                 **Plaintiff**

**v.**                                    **No. 1:13–CV–033-JLH–JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                          **Defendant**

### <u>Instructions for Recommended Disposition</u>

The following recommended disposition will be sent to U.S. District Judge J. Leon

Holmes.  A party to this dispute may file written objections to this recommendation.  An

objection must be specific and state the factual and/or legal basis for the objection.  An

objection to a factual finding must identify the finding and the evidence supporting the

objection.  Objections must be filed with the clerk of the court no later than 14 days from

the date of this recommendation.[1]  The objecting party must serve the opposing party

with a copy of an objection.  Failing to object within 14 days waives the right to appeal

questions of fact.[2]  If no objections are filed, Judge Holmes may adopt the recommended

disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Jeanie Linn Nestlehut seeks judicial review of the denial of her application for disability insurance benefits.[3]  Nestlehut has worked for her husband's insurance business since 2003.[4]  Initially, she worked as a full-time office manager, but at some point, the business grew.  The husband hired additional employees.  Nestlehut cut back her hours.  She now works part-time as the book-keeper,[5] but claims she cannot work full-time due to fibromyalgia and pain in her neck, back, and right elbow.[6]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Nestlehut has severe impairments — degenerative disc disease and fibromyalgia[7] — but she can do some sedentary work.[8]  Because a vocational expert classified Nestlehut's current job as sedentary work,[9] the ALJ determined Nestlehut is not disabled and denied the application.[10]

---

[3]SSA record at p. 95.

[4]*Id*. at pp. 130 & 137.

[5]*Id*. at p. 44.

[6]*Id*. at pp. 129, 145 & 164.

[7]*Id*. at p. 15.

[8]*Id*. at p. 16.

[9]*Id*. at p. 57.

[10]*Id*. at pp. 20-21.

After the Commissioner's Appeals Council denied a request for review,[11] the

decision became a final decision for judicial review.[12]  Nestlehut filed this case to

challenge the decision.[13]  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[14]

This recommendation explains why substantial evidence supports the decision and why

the ALJ made no legal error.

**Nestlehut's allegations**.  Nestlehut complains because her case wasn't reviewed

by a psychiatrist or psychologist.  She claims the ALJ should have developed the record

by ordering a consultative mental evaluation and completed a psychiatric review

technique (PRT).  She challenges the ALJ's reliance on the agency medical expert's

opinion, because the medical expert did not review subsequent medical records.  She

---

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

challenges the ALJ's reliance on her part-time work, arguing that she shouldn't be penalized for working, because her husband allows her to work at her convenience.  She insists she cannot do sedentary work on a full-time basis.  For these reasons, she maintains substantial evidence does not support the ALJ's decision.[15]

  **Substantial gainful activity**.  The first step of the disability-determination process requires the ALJ to determine whether the claimant is working at a substantial gainful activity level (SGA).  If the claimant is doing SGA, she is not disabled.[16]  Nestlehut works part-time, but even part-time work can be SGA.[17]  In 2010 when Nestlehut applied for disability benefits, and in 2011 at the time of her hearing, the SGA amount was $1,000/month.  In 2010, Nestlehut earned $19,000[18] — those earnings exceeded the cutoff for SGA.  In 2011, she earned $1,000 per month.[19]  Those earnings amounted to SGA.

  The hearing transcript reflects concern about Nestlehut's earnings.  The

---

[15]Docket entry # 13.

[16] 20 C.F.R. § 404.1520(a) & (b).

[17]*See* 20 C.F.R. § 404.1572(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."); *Burkhalter v. Schweiker*, 711 F.2d 841, 844-45 (8th Cir. 1983) (upholding the Commissioner's regulations specifying what work constitutes SGA).

[18]SSA record at pp. 104-05 & 111.

[19]*Id*. at p. 44.

4

ALJ questioned Nestlehut's employer — the husband — about how he arrived at Nestlehut's salary.  The husband testified that Nestlehut's salary facilitated book-keeping.[20]  When the ALJ asked whether he knew that a certain level of earnings disqualifies a claimant from receiving benefits, the husband stated that an employee told him she cannot earn more than $1,200 because she is disabled.[21]  The latter testimony suggests Nestlehut's salary was set to avoid SGA, but the ALJ gave Nestlehut "the benefit of the doubt."[22]  The ALJ shouldn't have, because Nestlehut was working SGA.

Nestlehut minimized her contribution to the business, reporting that she works 9 hours each week,[23] but her husband testified that she works 15 to 20 hours a week; she also covers the office when he travels.[24]  She works at her convenience.  At that point, the evidence showed Nestlehut worked SGA, but the ALJ issued the unfavorable decision a few months after the hearing.  By that time, the SGA level had increased to $1,010/month.  Nestlehut's earnings no longer rose to SGA.  The delay in issuing the decision works in Nestlehut's favor.  The delay requires the court to consider whether substantial evidence exists.

---

[20]*Id*. at pp. 51-52.

[21]*Id*. at p. 52.

[22]*Id*. at p. 15.

[23]*Id*. at p. 130.

[24]*Id*. at pp. 50-51.

**Applicable legal principles**.  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Nestlehut can do some sedentary work.[25] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[26] Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[27]  The ALJ reduced sedentary work by eliminating work at unprotected heights, moving or dangerous machinery, and driving.[28]  The question before the court is whether a reasonable mind would accept the evidence as adequate to show Nestlehut can work within these parameters.

**Credibility**.  Nestlehut claims she experiences constant, disabling pain such that she cannot work full-time.  Her claim turns on her credibility because the medical evidence shows no serious functional limitation.  The ALJ evaluated Nestlehut's

---

[25]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[26]20 C.F.R. § 404.1567(a).

[27]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[28]SSA record at p. 16.

credibility using the required two-step process and the required factors,[29] so the dispositive question is whether substantial evidence shows Nestlehut can work within the defined parameters.

**Physical impairment**.  Nestlehut claims she has been disabled since August 2010. At that time, Nestlehut complained about neck and back pain, but diagnostic imaging showed a normal neck and some degenerative changes in the lumbar spine, but nothing acute.[30]  Nestlehut's doctor suggested physical therapy, but Nestlehut wanted to see a specialist.

The specialist, an orthopedic surgeon, ordered more diagnostic imaging.[31]  The imaging showed degenerative changes in the neck at multiple levels, and in the low back at L5/S1, but nothing requiring surgery.[32]  The surgeon recommended options.  Nestlehut elected to see another specialist.[33]

According to the second specialist, also an orthopedist, the diagnostic imaging did not explain the reported symptoms.[34]  The specialist suspected fibromyalgia, but

---

[29]*See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[30]SSA record at p. 318.

[31]*Id*. at p. 331.

[32]*Id*. at pp. 330 & 332-34.

[33]*Id*. at p. 330.

[34]*Id*. at p. 339.

diagnosed myofascial pain syndrome.[35]  The specialist treated Nestlehut with trigger

point injections and oral medications.  After a few months of treatment, the specialist

diagnosed fibromyalgia.[36]  By that time, Nestlehut had already applied for disability

benefits, basing her claim on fibromyalgia.  During her last visit, the specialist reported

that Nestlehut was doing well.[37]

    The following day, Nestlehut saw a rheumatologist.  Although she was doing well

the day before, the rheumatologist reported that all 18 fibromyalgia trigger points were

positive.[38]  Medical standards provide for a diagnosis of fibromyalgia if a patient has

"widespread pain in combination with tenderness in at least 11 of the 18 sites known as

trigger points," after ruling out other reasons for complaints of pain.[39]  The

rheumatologist reported that Nestlehut has "classic fibromyalgia symptoms of lower

back and neck stiffness along with shoulder and hip stiffness and achiness."[40]

    According to the agency medical experts, the medical evidence of degenerative

---

[35]*Id.*

[36]*Id.* at p. 476.

[37]*Id.* at p. 525.

[38]*Id.* at p. 529.

[39]Paula Ford-Martin, Michele R. Webb & Laura Jean Cataldo, 3 The Gale
Encyclopedia of Med. 1729 (4th ed.).

[40]SSA record at p. 528.

changes and fibromyalgia supports sedentary work.[41]  The medical experts did not

review the rheumatologist's records, but nothing in those records support a further

reduction.  The rheumatologist confirmed what the record already showed: a diagnosis

of fibromyalgia.  Nestlehut also complains because the medical expert did not review her

nerve conduction study,[42] but that evidence falls outside the relevant time period.[43]

A reasonable mind would accept the evidence as adequate to show Nestlehut can

do sedentary work because fibromyalgia's primary symptom is pain "with aches,

tenderness, and stiffness of multiple muscles, joints, and soft tissues...most common in

the neck, shoulders, chest, arms, legs, hips, and back."[44]  Symptoms fluctuate.  No

medical evidence shows these symptoms prevent Nestlehut from lifting 10 pounds at a

time or occasionally lifting or carrying articles like docket files, ledgers, and small tools,

albeit with some degree of fluctuating pain.  The medical evidence shows no serious

functional limitation.

---

[41]*Id*. at pp. 488 & 540.

[42]*Id*. at pp. 573-74.

[43]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (to support a remand, new evidence must be probative of claimant's condition for the time period for which benefits were denied; that is, on or before the date of the ALJ's decision).

[44]Paula Ford-Martin , Michele R. Webb & Laura Jean Cataldo, 3 The Gale Encyclopedia of Med. 1728 (4th ed.).

Because fibromyalgia has no cure, treatment consists of symptom management.[45] Nestlehut sees a chiropractor regularly;[46] the chiropractor prescribed regular stretching exercises.[47] The rheumatologist prescribed oral medications and exercise. These recommendations indicate Nestlehut's condition can be controlled with treatment. "An impairment which can be controlled by treatment or medication is not considered disabling."[48] Nestlehut reported some improvement from medication, but she does no regular exercise. She testified that her medications make her sleepy; one medication was prescribed for sleep. To the extent, medication causes daytime sleepiness, the elimination of work at unprotected heights, moving or dangerous machinery, and driving, responds to that side effect.

**Mental impairment**. The ALJ determined Nestlehut has no severe mental impairment. After applying for disability benefits, Nestlehut underwent computer testing that indicates she has attention deficits,[49] but the record includes no evidence

_____

[45]*Id*. at p. 1729.

[46]SSA record at pp. 222-316, 342-444, 491-506 & 543-68.

[47]*Id*. at pp. 224, 505, 547 & 556.

[48]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[49]SSA record at p. 512. Nestlehut was tested using the IVA+Plus Integrated Visual & Auditory Continuous Performance Test. "Continuous Performance Tests, which involve tasks performed on a computer, may support a diagnosis of attention-deficit… but by themselves are not diagnostic." Tish Davidson, Laura Jean Cataldo & William A. Atkins, 1 The Gale Encyclopedia of Mental Health 152 (3d ed.).

showing the deficits impair Nestlehut's ability to work.  Nestlehut's doctor prescribed medication to control Nestlehut's symptoms.[50]  This scant evidence does not implicate the need for a consultative mental evaluation.  Even if a PRT was required,[51] Nestlehut can show no error because "there is no credible evidence of a severe mental impairment."[52]

**Conclusion and recommendation**.  A vocational expert classified Nestlehut's job as sedentary work.  That evidence shows work exists that Nestlehut can do.  Substantial evidence supports the ALJ's decision that she can do her job full-time.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Nestlehut's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

It is so ordered this 16th day of June, 2014.

_____

United States Magistrate Judge

---

[50]SSA record at p. 519.

[51]One purpose of the PRT is to identify the need for consultative mental examination.  20 C.F.R. § 404.1520a(a)(1).

[52]*Cuthrell v. Astrue*, 702 F.3d, 1114, 1118 (8th Cir. 2013).