**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JEANIE LINN NESTLEHUT                                                                                              PLAINTIFF

v.                                              No. 1:13CV00033 JLH-JTK

CAROLYN W. COLVIN, Acting Commissioner,
SOCIAL SECURITY ADMINISTRATION                                                         DEFENDANT

Jeanie Linn Nestlehut seeks judicial review of the denial of her application for disability insurance benefits. The magistrate judge recommended that the decision of the Commissioner be affirmed. After conducting a *de novo* review, the Court agrees with the magistrate judge's recommendation that the decision of the Commissioner should be affirmed but not with all of the magistrate judge's reasoning. The following opinion incorporates much but not all of the magistrate judge's report.

**OPINION**

Nestlehut has worked for her husband's insurance business since 2003.[1] Initially, she worked as a full-time office manager, but the business grew, the husband hired additional employees, and Nestlehut cut back her hours. She now works part-time as the bookkeeper,[2] but claims that she cannot work full-time due to fibromyalgia and pain in her neck, back, and right elbow.[3]

---

[1] SSA Record at pp. 130 and 137.

[2] *Id*. at p. 44.

[3] *Id*. at pp. 129, 145 and 164.

**THE COMMISSIONER'S DECISION**

After considering the application, the Commissioner's ALJ determined that Nestlehut has severe impairments – degenerative disc disease and fibromyalgia[4] – but that she can perform sedentary work with restrictions on driving, working at heights, and working near dangerous machinery.[5] Because a vocational expert classified Nestlehut's current job as sedentary work,[6] the ALJ determined that Nestlehut is not disabled and denied the application.[7]

After the Commissioner's Appeals Council denied a request for review,[8] the decision became a final decision for judicial review.[9] Nestlehut commenced this action to appeal the decision.[10] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]

---

[4]*Id*. at p. 15.

[5]*Id*. at p. 16.

[6]*Id*. at p. 57.

[7]*Id*. at pp. 20-21.

[8]*Id*. at p. 1.

[9]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that claimants may appeal only final decisions).

[10]Document #2.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

## NESTLEHUT'S ALLEGATIONS

Nestlehut complains because her case was not reviewed by a psychiatrist or psychologist. She contends that the ALJ should have developed the record by ordering a consultative mental evaluation and completing a psychiatric review technique (PRT). She challenges the ALJ's reliance on the agency medical consultant's opinion because the medical consultant did not review subsequent medical records and because the consultant's specialty does not relate to Nestlehut's impairments. She challenges the ALJ's reliance on her part-time work, arguing that she should not be penalized for working because her husband allows her to work at her convenience. She insists that she cannot do sedentary work on a full-time basis. For these reasons, she maintains that substantial evidence does not support the ALJ's decision.[12]

## APPLICABLE LEGAL PRINCIPLES

Substantial evidence is evidence sufficient to show a reasonable mind that the findings of the ALJ are correct.[13] The ALJ found that Nestlehut can perform sedentary work with restrictions to avoid danger due to drowsiness. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[14] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional

---

[12] Document #13.

[13] *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[14] 20 C.F.R. § 404.1567(a).

limitations."[15] In determining Nestlehut's residual functional capacity, the ALJ imposed additional limitations beyond the definition of "sedentary work" by eliminating work at unprotected heights, work near moving or dangerous machinery, and driving a vehicle.[16] The question before the court is whether a reasonable mind would accept the evidence as adequate to show that Nestlehut can work within these parameters.

## CREDIBILITY

Nestlehut claims that she experiences constant, disabling pain such that she cannot work full-time. Her claim turns on her credibility because no medical professional has opined that she has such serious functional limitations. The ALJ evaluated Nestlehut's credibility using the required two-step process and the required factors,[17] so the dispositive question is whether substantial evidence shows that Nestlehut can work within the defined parameters.

## PHYSICAL IMPAIRMENT

Nestlehut claims that she has been disabled since August 2010. At that time, Nestlehut complained about neck and back pain, but diagnostic imaging showed a normal neck and some degenerative changes in the lumbar spine, though nothing sufficiently acute to account for her pain.[18] Nestlehut's doctor referred her to an orthopedic surgeon who ordered more diagnostic imaging.[19]

---

[15] SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[16] SSA Record at p. 16.

[17] *See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[18] SSA Record at p. 318.

[19] *Id*. at p. 331.

The imaging showed degenerative changes in the neck at multiple levels, and in the low back at L5/S1, but nothing requiring surgery.[20] Nestlehut was referred to another orthopedic physician.[21]

According to the second orthopedist, the diagnostic imaging did not explain the reported symptoms.[22] The orthopedist suspected fibromyalgia but diagnosed myofascial pain syndrome.[23] He treated Nestlehut with trigger point injections and oral medications. After a few months of treatment, he diagnosed fibromyalgia.[24] During her last visit, the orthopedist reported that Nestlehut was doing well.[25]

The following day, Nestlehut saw a rheumatologist. Although she had been doing well the day before, the rheumatologist reported that all 18 fibromyalgia trigger points were positive.[26] Medical standards provide for a diagnosis of fibromyalgia if a patient has "widespread pain in combination with tenderness in at least 11 of the 18 sites known as trigger points," after ruling out other reasons for complaints of pain.[27] The rheumatologist reported that Nestlehut has "classic

---

[20]*Id.* at pp. 330 and 332-34.

[21]*Id.* at p. 330.

[22]*Id.* at p. 339.

[23]*Id.*

[24]*Id.* at p. 476.

[25]*Id.* at p. 525.

[26]*Id.* at p. 529.

[27]Paula Ford-Martin, Michele R. Webb & Laura Jean Cataldo, Fibromyalgia, 3 The Gale Encyclopedia of Med. 1729 (4th ed.).

fibromyalgia symptoms of lower back and neck stiffness along with shoulder and hip stiffness and achiness."[28]

According to the agency medical consultants, the medical evidence of degenerative changes and fibromyalgia supports sedentary work.[29] Nestlehut complains that the ALJ gave "great weight" to the opinions of one of these medical consultants. She points out that the number "24" next to the first medical consultant's name[30] indicates that his medical specialty is in nephrology, which is not relevant to her diagnoses. Nestlehut does not challenge the expertise of the second medical consultant.[31] The second medical consultant independently received Nestlehut's medical records and then affirmed the first consultant's conclusions.[32]

In support of her argument, Nestlehut relies on 20 C.F.R. § 404.1527(c)(5), which provides, "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." One problem with Nestlehut's argument is that the opinions offered by the agency medical consultants regarding Nestlehut's residual functional capacity are not contrary to any opinions stated in the record by any physician with greater expertise in orthopedics or rheumatology than the agency consultants. Furthermore, the decision as to a claimant's residual functional capacity is reserved to the

---

[28]SSA Record at p. 528.

[29]*Id.* at pp. 488 and 540.

[30]The first medical consultant was James Wellons, M.D. Code number 24 appears next to Dr. Wellons' name. *See* POMS DI 28086.31 B.2.

[31]Jim Takach, M.D.

[32]SSA Record at pp. 536-40.

Commissioner.[33] The regulation also provides: "State agency medical and psychological consultants and other program specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of state agency medical consultants . . . ."[34] That the ALJ gave "great weight" to the opinion of a state agency medical consultant in assessing Nestlehut's residual functional capacity is not error.

The medical consultants did not review the rheumatologist's records, but nothing in those records support a further reduction. The rheumatologist confirmed what the record already showed: a diagnosis of fibromyalgia.

Nestlehut also complains because the medical consultants did not review her nerve conduction study.[35] The nerve conduction study was performed the month after the ALJ issued his decision. Nestlehut submitted the report for review by the Appeals Council, which accepted the study as new evidence but found that it did not provide a basis for changing the ALJ's decision.[36] Although the nerve conduction study was performed after the ALJ's decision, Nestlehut correctly argues that it relates to her condition on or before the ALJ's decision.[37] There is no reasonable likelihood, however, that the nerve conduction study would have changed the ALJ's opinion.[38]

---

[33] 20 C.F.R. § 404.1527(d)(2) and (3).

[34] 20 C.F.R. § 404.1527(e)(2)(i).

[35] The nerve conduction study is found in the SSA Record at pp. 573-74.

[36] *Id*. at pp. 1-5.

[37] *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990).

[38] *Cf. Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997).

Although the nerve conduction study found "evidence of moderate right carpal tunnel syndrome,"[39] the examination found that Nestlehut had full strength and normal motor sensory reflexes.[40] Nothing in the record suggests that Nestlehut's carpal tunnel syndrome cannot be managed by conservative treatment or healed by surgery.

A reasonable mind would accept the evidence as adequate to show Nestlehut can do sedentary work because fibromyalgia's primary symptom is pain "with aches, tenderness, and stiffness of multiple muscles, joints, and soft tissues . . . most common in the neck, shoulders, chest, arms, legs, hips, and back."[41] Symptoms fluctuate. No medical evidence shows that these symptoms prevent Nestlehut from lifting 10 pounds at a time or occasionally lifting or carrying articles like docket files, ledgers, and small tools, albeit with some degree of fluctuating pain.

Because fibromyalgia has no cure, treatment consists of symptom management.[42] Nestlehut sees a chiropractor regularly;[43] the chiropractor prescribed regular stretching exercises.[44] The rheumatologist prescribed oral medications.[45] These recommendations indicate that Nestlehut's condition can be controlled with treatment. "An impairment which can be controlled by treatment

---

[39]SSA Record at p. 574.

[40]*Id*. at p. 573.

[41]Paula Ford-Martin , Michele R. Webb & Laura Jean Cataldo, Fibromyalgia, 3 The Gale Encyclopedia of Med. 1728 (4th ed.).

[42]*Id*. at p. 1729.

[43]SSA Record at pp. 222-316, 342-444, 491-506 and 543-68.

[44]*Id*. at pp. 224-25, 505-06, 547-48, and 556.

[45]*Id*. at 570-71.

or medication is not considered disabling."[46]  Nestlehut reported some improvement from medication, but she does no regular exercise.  She testified that her medications make her sleepy; one medication was prescribed for sleep.  To the extent that medication causes daytime sleepiness, the elimination of work at unprotected heights, moving or dangerous machinery, and driving, responds to that side effect.

### MENTAL IMPAIRMENT

The ALJ determined Nestlehut has no severe mental impairment.  After applying for disability benefits, Nestlehut underwent computer testing that indicates she has attention deficits,[47] but this report is unsigned,[48] so the record does not show who administered the test and wrote the report, nor whether the person or persons who did so were qualified to administer the test or render opinions based upon it.  A report that contains expert opinions but which is unsigned and is not shown to be the work of an expert is not substantial evidence.[49]  Nestlehut's doctor prescribed Adderall to control her symptoms but imposed no limitations on her activities.[50]  This scant evidence

---

[46]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[47]SSA record at p. 512.  Nestlehut was tested using the IVA+Plus Integrated Visual & Auditory Continuous Performance Test.  "Continuous Performance Tests, which involve tasks performed on a computer, may support a diagnosis of attention-deficit . . . but by themselves are not diagnostic."  Tish Davidson, Laura Jean Cataldo & William A. Atkins, Attention Deficit Hyperactivity Disorder (ADHD), 1 The Gale Encyclopedia of Mental Health 152 (3d ed.).

[48]The report was sent to SSA by Nestlehut's lawyer via facsimile.

[49]*Cf. Roach v. Colvin*, No. 6:12CV06092, 2013 WL 2151550, at *4 (W.D. Ark. May 16, 2013).

[50]SSA record at p. 519.

does not implicate the need for a consultative mental evaluation. Even if a PRT was required,[51] Nestlehut can show no error because "there is no credible evidence of a severe mental impairment."[52]

## CONCLUSION AND RECOMMENDATION

A vocational expert classified Nestlehut's bookkeeping as sedentary work. Substantial evidence shows that Nestlehut can perform sedentary work with the additional limitations imposed by the ALJ. The ALJ properly performed the five-step sequential evaluation and made no legal error. For these reasons, Nestlehut's request for relief is denied. Document #2. The Commissioner's decision is affirmed.

IT IS SO ORDERED this 11th day of July, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[51]One purpose of the PRT is to identify the need for consultative mental examination. 20 C.F.R. § 404.1520a(a)(1).

[52]*Cuthrell v. Astrue*, 702 F.3d, 1114, 1118 (8th Cir. 2013).